864 So.2d 1197 (2004)
Harry COPELAND, Appellant,
v.
STATE of Florida, Appellee.
No. 1D02-419.
District Court of Appeal of Florida, First District.
January 14, 2004.
*1198 Steven L. Seliger, Garcia and Seliger, Quincy, for Appellant.
Charlie Crist, Attorney General; Karen Armstrong, Assistant Attorney General,
Office of the Attorney General, Tallahassee, for Appellee.
PER CURIAM.
The appellant, Harry Copeland, appeals the trial court's revocation of his probation, arguing that the state failed to prove that his violations of probation were willful because he was suffering from a mental illness, and the trial court abused its discretion in finding otherwise. We agree and, therefore, reverse.

I. Background
In August 1998, the appellant was charged with two counts of attempted first-degree murder. Pursuant to a negotiated plea, and with the victims' consent, the appellant pled no contest to the lesser included offense of aggravated battery with a deadly weapon. In exchange, he was sentenced to an eleven-year, suspended sentence and placed on probation. In November 2000, the appellant's probation officer filed a violation report alleging that the appellant failed to file monthly reports for September and October 2000, was behind in his cost of supervision payments, had changed his residence in August of 2000 without notifying his probation officer, and was behind in paying other monetary obligations.
The appellant initially argued that he was incompetent to proceed to trial. However, after a competency hearing, at which three experts testified, the trial court found the appellant competent to proceed. At the violation of probation hearing, psychologist Dr. Michael Thomas D'Errico stated that he had diagnosed the appellant as having schizophrenia, paranoid type. Dr. D'Errico explained that the appellant believed that while he was in the Army, the Army had placed a transmitter behind his eye and that someone had placed a transmitter in one of his teeth. The appellant believed that the Army and the secret *1199 military police were watching his movements and intended to kill him. The appellant believed that the Army and secret military police were closing in on him.
The appellant had been prescribed medication, but stopped taking it because it interfered with his libido. The appellant's counselor agreed that they would try to maintain the appellant's mental health with counseling and without the medication. After being off his medication for months, the appellant became delusional again. He saw a red truck outside his home and believed that the military police had found him and that his life was in danger. The appellant then abandoned his home and moved to Tallahassee to live in a homeless shelter.
Dr. Terry Leland, who had seen the appellant as far back as 1998, testified at the competency hearing that he did not necessarily agree with Dr. D'Errico's diagnosis of paranoid schizophrenia because the appellant was also suffering from a number of substance abuse problems. Dr. Leland told the trial court that it was possible that the appellant had exaggerated or feigned some of his symptoms. Dr. Leland also stated, however, that it was possible that the appellant was a paranoid schizophrenic and that while some symptoms of schizophrenia were absent in Mr. Copeland, he in fact exhibited the common symptoms. Dr. William Spence testified at the appellant's competency hearing and found him competent to proceed to a violation of probation hearing.
After the violation of probation hearing, the trial court found the appellant to be in willful violation of his probation. The court revoked his probation and sentenced him to eleven years in prison.

II. Mental Illness
A violation that causes a revocation of probation must be both willful and substantial. See Meade v. State, 799 So.2d 430, 432 (Fla. 1st DCA 2001). Illness, including mental illness, can render a technical violation of probation "not substantial or willful because a mental or physical illness can be debilitating to the point that a probationer cannot comply with the terms of probation." Id. For example, in Williams v. State, 728 So.2d 287, 288 (Fla. 2d DCA 1999), the court held that Williams's failure to file reports and submit to urinalysis testing, violations of his probation, were not willful because he was "crippled" by severe depression. In addition, the court stated, the violations did not appear to be willful because Williams had successfully completed more than two years of probation until the violation. Id. On the other hand, in Palma v. State, 830 So.2d 201, 203 (Fla. 5th DCA 2002), the Fifth District held that despite Palma's bipolar disorder, her violation of probation was willful because she had made the decision to stop taking her medication, she had a history of violating probation, and although her disorder made it difficult to follow the rules, she had successfully completed a treatment program.
In the instant case, the uncontroverted evidence at the VOP hearing showed that the appellant suffered from severe delusions produced by his paranoid schizophrenia and that this illness caused him to violate his probation. Dr. D'Errico, the only doctor to testify at the violation of probation hearing, stated that the appellant suffered from severe delusions caused by paranoid schizophrenia. Dr. D'Errico also testified that this illness affected his everyday behavior and caused him to abandon his residence in fear for his life.
The State points to the testimony of the two doctors, Dr. Leland and Dr. Spence, who testified previously at the appellant's competency hearing, as contradicting Dr. D'Errico's testimony. Dr. Leland's assertions, however, concerned not the willful *1200 nature of the appellant's violation, but his competency to proceed to a VOP hearing. Similarly, Dr. Spence merely testified as to the appellant's competency to proceed to a VOP hearing, not the willful nature of the appellant's violation. Competency to proceed to a hearing and the willful nature of a violation are not necessarily the same determination. Cf. Patton v. State, 784 So.2d 380, 387 (Fla.2000) (ruling that "whether a defendant is competent to stand trial is not necessarily relevant on the question of whether the defendant was insane at the time of the killing" because these determinations "involve the defendant's mental state at separate and distinct points in time"). In the instant case, whether the appellant had the ability to "consult with counsel with a reasonable degree of rational understanding" and understand the pending proceedings, see Fla. R.Crim. P. 3.211(a)(1), is not the same determination as whether the appellant's actions were willful at the time of his violation, a year before the competency proceedings.
The State also argues that because the appellant failed to take his medication, the violation was willful under Palma. The instant case is distinguishable. First, there was evidence that the appellant's counselor concurred in the appellant's decision to discontinue medication and receive treatment solely through counseling. That does not appear to be the situation in Palma. Second, and more importantly, Palma's failure to take her medication was just one reason the court found her violation willful. Palma's prior history of probation violations also played a part in the court's decision. See Palma, 830 So.2d at 203. In the instant case, this was the appellant's first violation.
Accordingly, the trial court abused its discretion by finding that the State sufficiently proved that the violations of probation were willful. See Mead e, 799 So.2d at 432 (reversing probation revocation for insufficient evidence); Bell v. State, 643 So.2d 674, 675 (Fla. 1st DCA 1994) (reversing probation revocation; the standard of review is abuse of discretion).
REVERSED and REMANDED.
BROWNING, POLSTON and HAWKES, JJ., concur.