SALTER, J.
 

 Princess Chandler appeals from an adjudication of guilt, order revoking community control, and ten-year prison sentence.
 
 [1]
 
 The issue is whether Ms. Chandler’s failure to make required monthly restitution payments during the period of community control, a condition she accepted as part of a plea colloquy during which she both exhibited and acknowledged a complete understanding of the proceedings, was willful and substantial, based on her post-sentencing claims of mental illness. Ms. Chandler also asserts that the ten-year sentence “demonstrated judicial vindictiveness and violated Ms. Chandler’s due process rights.” We affirm.
 

 The Underlying Case and Plea Agreement
 

 Ms. Chandler pled guilty in 2007 to charges of second degree grand theft and contracting without a license. The maximum sentence for these offenses according to the scoresheet was sixteen years, state prison. Ms. Chandler was ordered to repay the elderly victim $85,883.19 in restitution at a rate of $500 per month. Because she had no history of prior convictions and the victim supported the primacy of restitution (the theft was essentially the victim’s life savings), Ms. Chandler was sentenced to two years of community control followed by ten years of reporting probation. During the plea colloquy, Ms. Chandler acknowledged under oath that she understood the terms of her sentence (including the restitution requirement), that she had never been treated for mental illness, and that she was not “under the influence of any drugs, alcohol, medication, or anything that would interfere with [her] understanding.” Her trial attorney represented to the court, with Ms. Chandler present, that Ms. Chandler would immediately sign over to the victim half her pension of $1000 per month (hence the $500 monthly minimum restitution payment), that Ms. Chandler anticipated proceeds from the sale of a property she owned, and that Ms. Chandler anticipated profits from the sale of herbal supplements and from wellness seminars that were “not a fairytale.”
 
 [2]
 

 Nonpayment and the Competency Evaluations
 

 Ms. Chandler did not make a single restitution payment. The community control officer dutifully reported this, filed an affidavit of violation of community control,
 
 *1109
 
 and further informed the trial court that Ms. Chandler seemed to be mentally ill. The court appointed two mental health professionals to evaluate Ms. Chandler. In separate reports in July 2008, a clinical psychologist concluded that Ms. Chandler was “incompetent to proceed,” and an M.D. psychiatrist reached the same conclusion. Both professionals recommended hospitalization in a forensic facility and further observation, but both also noted the possibility of manipulative behaviors by Ms. Chandler to affect the evaluations.
 

 In September 2008, further psychiatric evaluations were conducted. The same two professionals reported independently that Ms. Chandler was competent to proceed with the violation hearing. A third professional, a psychologist, reached the same conclusion.
 

 The Violation Hearing and Sentence
 

 The community control officer testified that Ms. Chandler failed to make any payments and that she told him that anticipated profits from her herbal supplements and wellness seminar business, which her counsel argued at the sentencing hearing “were not a fairytale,” had produced no income during the first four months of her community control.
 
 [3]
 
 The officer further testified that Ms. Chandler told him that her promised pension or social security income had been “suspended.”
 

 The defense argued that Ms. Chandler’s mental illness rendered her violation neither willful nor substantial, and thus, the trial court could not revoke her probation. All parties and the court agreed in this case that Ms. Chandler, a former school teacher, had suffered from mental illness in the recent past. In fact, the probation violation hearing was delayed for some five months after her arrest for the violation of probation because she was not competent to participate in a hearing. Remarkably, however, the defense offered no expert testimony at the probation violation hearing, when it finally occurred several months later, to support the defense that she was mentally ill during the time she was in violation of her probation. Instead, defense counsel sought to rely upon two mental health professionals’ evaluations focused on the post-arrest period on the then separate issue of whether she was competent to proceed to hearing. These two professionals found her incompetent to proceed to hearing from some period post-arrest to September 26, 2008, at which time she was sufficiently recovered for the purpose of participating in the probation violation hearing. These professionals made no findings concerning whether, at the time Ms. Chandler violated probation, she was so mentally ill that the violations themselves were not or could not have been willful and substantial — the primary defense advanced for the violation.
 

 Although a “mental illness can render a violation of probation not -willful and substantial,”
 
 see Robinson v. State,
 
 744 So.2d 1188, 1189 (Fla. 2d DCA 1999), an evaluation for “competency to proceed to a hearing and the willful nature of a violation are not necessarily the same determination,”
 
 see Copeland v. State,
 
 864 So.2d 1197, 1200 (Fla. 1st DCA 2004). That is so in this case. Because the defense failed to offer any expert testimony that Ms. Chandler’s mental condition was such that her violation was not willful and substantial, the trial court did not abuse its discretion in concluding Ms. Chandler willfully refused to make the restitution payments, and revoking her probation.
 
 See Stephens
 
 
 *1110
 

 v. State,
 
 630 So.2d 1090 (Fla.1994). Nor does the record establish a vindictive sentence.
 
 See Wilson v. State,
 
 845 So.2d 142 (Fla.2003).
 

 Ms. Chandler additionally argues that the trial court violated her due process rights by placing the burden on her, pursuant to section 948.06(5), Florida Statutes,
 
 [4]
 
 to prove that she was financially unable to meet her restitution obligation. Adhering to binding precedent in this district,
 
 see Del Valle v. State,
 
 994 So.2d 425 (Fla. 3d DCA 2008), we find the statute is constitutional and lawfully places the burden upon Ms. Chandler to prove by clear and convincing evidence that she did not have the present resources to pay restitution in this case. We note, however, that
 
 Del Valle
 
 is presently pending review before the Florida Supreme Court.
 
 See Del Valle v. State,
 
 3 So.3d 316 (Fla.2009) (Oral argument held Oct. 7, 2009). The decision in this case should be consistent with the ultimate decision in
 
 Del Valle.
 

 For these reasons, we affirm the decision of the trial court below, but withhold issuance of the mandate pending the decision of the Florida Supreme Court in
 
 Del Valle v. State,
 
 3 So.3d 316 (Fla.2009).
 

 Affirmed.
 

 [1]
 

 . The sentence provided a credit for time previously served of 602 days.
 

 [2]
 

 . Ms. Chandler's counsel in this appeal was not her attorney when those representations were made to the trial court.
 

 [3]
 

 . As it turned out, Ms. Chandler’s business was conducted out of a Denny’s restaurant. The property to be sold (according to her attorney) to produce proceeds for restitution was in foreclosure as a result of a tax lien and a defaulted mortgage.
 

 [4]
 

 . Section 948.06(5) (2008) reads in part:
 

 In any hearing in which the failure of a probationer or offender in community control to pay restitution or the cost of supervision as provided in s. 948.09, as directed, is established by the state, if the probationer or offender asserts his or her inability to pay restitution or the cost of supervision, it is incumbent upon the probationer or offender to prove by clear and convincing evidence that he or she does not have the present resources available to pay restitution or the cost of supervision despite sufficient bona fide efforts legally to acquire the resources to do so. (Emphasis added).